### APPEAL OF FIDELITY STORAGE & WAREHOUSE CO.

Docket No. 2326.    Submitted May 9, 1925.    Decided July 15, 1925.

On the evidence, *held*, that taxpayer has not established values of property paid in for stock in excess of those allowed by the Commissioner in computing invested capital.

*W. A. Bolinger*, Esq., *H. E. Witman*, C. P. A., and *W. C. Magathan*, Esq., for the taxpayer.

*Benjamin H. Saunders*, Esq., for the Commissioner.

Before IVINS and MORRIS.

This appeal is from a determination of deficiencies in income and profits taxes for fiscal years ended May 31, 1918 to 1921, inclusive, in the aggregate amount of $8,505.99. Two issues were presented by the pleadings: (1) The valuation of certain real estate for purposes of invested capital; and (2) proper allowances for depreciation. The taxpayer withdrew the second issue at the hearing.

### FINDINGS OF FACT.

The taxpayer is a Pennsylvania corporation and has operated a storage warehouse and safety deposit vaults in Philadelphia since 1899.

The warehouse operated by the taxpayer was constructed in 1895 by " The Fidelity Storage & Warehouse Co.," a corporation different from the taxpayer. On May 26, 1899, The Fidelity Storage & Warehouse Co. transferred the warehouse and land thereunder and all its goods, chattels, rights, credits, etc., to one Frank W. Elliott. The closing balance sheet of The Fidelity Storage & Warehouse Co., dated June 2, 1899, but obviously referring to a condition prior to the conveyance of its property to Elliott, was as follows:

*The Fidelity Storage & Warehouse Co. balance sheet, June 2, 1899.*

ASSETS.

| | | | |
|---|---|---:|---:|
| Cash | | $725.44 | |
| Petty cash | | 83.15 | |
| | | | $808.59 |
| Bills receivable | | 37,650.00 | |
| | | 69.65 | |
| | | | 37,719.65 |
| Accounts receivable: | | | |
| Customers | | 20,424.62 | |
| Others | | 5,956.16 | |
| | | | 26,380.78 |
| | | | 64,909.02 |
| Real estate, buildings, and equipment: | | | |
| Real estate | | 203,241.56 | |
| Building, 1811 Market Street | | 256,044.38 | |
| Property, 1809 Market Street | | 8,081.68 | |
| Plant, Market Street | | 29,988.50 | |
| Plant, Delaware Avenue | | 81,026.58 | |
| Cold storage | | 43,064.97 | |
| Fixtures, new building | | 2,986.41 | |
| | | | 624,434.08 |
| | | | 689,343.10 |

LIABILITIES.

| | | |
|---|---:|---:|
| Bills payable | | $132,037.94 |
| Mortgages payable | | 257,500.00 |
| Accounts payable | | 32,266.34 |
| Accrued accounts: | | |
|     Pennsylvania State tax | $1,027.64 | |
|     City real estate tax | 3,441.00 | |
|     Interest | 138.33 | |
| | | 4,606.97 |

CAPITAL STOCK AND UNDIVIDED PROFITS.

| | | |
|---|---:|---:|
| Preferred stock | $43,500.00 | |
| Common stock | 167,000.00 | |
| | 210,500.00 | |
| Undivided profits | 52,431.85 | |
| | | 262,931.85 |
| | | 689,343.10 |

Under date of June 2, 1899, Elliott transferred all of the property received from The Fidelity Storage & Warehouse Co. to the "Fidelity Storage & Warehouse Co.," the taxpayer. The consideration for such transfer does not appear in the record, but the purchase was made in pursuance of the following undated resolution of the board of directors of the taxpayer:

Whereas, Frank W. Elliott has submitted a proposition to sell to this Company all the property, rights and equities of The Fidelity Storage and Warehouse Company subject only to the mortgage of one hundred and twenty five thousand dollars now held by Mrs. Ellen W. Harrison not matured, and clear of all other indebtedness, in exchange for the sum of three hundred and ninety-nine thousand dollars in the stock of this Company and two hundred and fifty thousand dollars of five per cent gold mortgage twenty year bonds out of a total bond issue of four hundred thousand dollars out of which total issue after the delivery of the above two hundred and fifty thousand dollars an additional one hundred and twenty-five thousand dollars shall be set aside by this corporation to pay the mortgage held by Mrs. Ellen W. Harrison at maturity;

Resolved, That the foregoing proposition be accepted, that proper and sufficient Deeds of Transfer and Conveyance and Bills of Sale be executed by the said Frank W. Elliott for the said property, rights and equities of the said The Fidelity Storage and Warehouse Company for the considerations named, and that the officers of this corporation be hereby empowered and directed to immediately take all steps necessary to carry this resolution into effect.

Adjourned to meet at the call of the President.

(Signed)     ABR. R. PERKINS,<br>Secretary.

The balance she t of the taxpayer on June 3, 1899, according to the opening journal entry, was:

PHILADELPHIA, *June 3, 1899.*

On June 2, 1899, the " Fidelity Storage and Warehouse Co." acquired by purchase from Frank W. Elliott the following *assets* subject to the following *liabilities:*

### ASSETS.

| | | | |
|---|---|---|---|
| 1. *Plant a/c* (consisting of busses, vans, horses, fixtures of 1815–19 Market Street) | | $59,988.50 | |
| 2. *Fixtures* 1811–13 Market Street | | 3,075.18 | |
| 4. *Delaware Avenue property* (equity in) | | 10,000.00 | |
| 6. *Property 1809 Market Street* (equity in) | | 8,081.68 | |
| 8. *Customers' ledger* (as per schedule) | | 20,399.82 | |
| 12. *Treasury bonds* for redemption H mtge | $125,000.00 | | |
|     in treasury of company | 25,000.00 | | |
| | | 150,000.00 | |
| 13. *Good will* | | 125,000.00 | |
| 14. *Property 1811–13 Market Street* | | 475,000.00 | |
| 16. *Safe-deposit vaults and boxes* | | 80,000.00 | |
| 18. *Cash* (posted from cashbook) | | 1,703.38 | |
| 22. *Petty cash* | | 83.15 | $933,331.71 |

### LIABILITIES.

| | | | |
|---|---|---|---|
| 26. *Capital stock* (posted from cashbook) | | $1,000.00 | |
|     *Capital stock* (balance now journalized) | | 399,000.00 | |
| 28. *Mortgage* to Ellen M. Harrison | | 125,000.00 | |
| 30. *Bonds a/c* 10/20 year 5% gold | | 400,000.00 | |
| 32. *Accrued interest* (on bonds and mtgs from 3/1–6/2) | | 5,000.00 | |
| 34. *Taxes* (on 1811–13 Market Street from 3/1–6/2) | | 468.75 | |
| 36. *Insurance* (on 1811–13 Market Street from 3/1–6/2) | | 155.00 | |
| 40. *Current bills* (bal unpaid from bills, 3/1–6/2) | | 360.09 | |
| 42. Undivided profits (on business from 3–6/2 less exp.) | | 2,347.87 | |
| | | | 933,331.71 |

Five hundred and eighteen out of 2,265 shares in the old company were held by persons who owned no shares in the taxpayer on June 2, 1899; 1,687 out of 4,000 shares in the taxpayer were held on June 2, 1899, by persons who owned, prior thereto, no shares in the old company.

At a meeting of the taxpayer's board of directors, held May 7, 1906, it was voted:

To charge off on the books of the company the amount of Good Will (125,000) of the Safe Deposit boxes $20.000, and of the Plant % $55,000, and increase the Real Estate % 1811–13 Market St. by the aggregate of these amounts viz. $200,000, the latter being nearer the real value of the property.

Under date of May 8, 1906, the necessary entries were made to carry the foregoing vote into effect.

The Commissioner in auditing the taxpayer's returns reduced the taxpayer's claimed invested capital by $125,000, on the theory that it represented either good will the value of which had not been established, or a write-up after acquisition of the value of the tangibles.

DECISION.

The determination of the Commissioner is approved.

OPINION.

IVINS: When the taxpayer started business it took over for stock, bonds, and the assumption of liabilities, certain assets of the predecessor company. In its opening balance sheet it put the 1811–13 Market Street property in at $475,000; good will, $125,000; plant account, $59,988.50, and safe-deposit vaults and boxes, $80,000. In 1906, it increased the item of property, 1811–13 Market Street, to $675,000, simultaneously striking out good will and reducing the plant account by $55,000 and the safe-deposit account by $20,000. We are not concerned with the effect of the changes from plant account and safe-deposit account to property account, but wholly with the matter of $125,000 originally charged to good will and later transferred to property, i. e., real estate. The Commissioner originally reduced the taxpayer's invested capital by $125,000 upon the ground that he had not been shown that good will to the fair market value of $125,000 had been paid in for stock. The taxpayer took the position that the original charge to good will was a mistake, that it had been corrected in 1906, that the land and building originally charged as an asset at $475,000 were worth at the time of acquisition at least $600,000, and so constituted tangibles paid in for stock to a market value equivalent to the par value of the stock issued therefor.

The sole problem we are confronted with is whether the Market Street property was worth $600,000 on June 2, 1899.

The fact that the property in question was originally taken into the taxpayer's books at $475,000 is a rather strong indication that its market value at that time was not greater than that amount. The difference between the value of the tangibles and receivables and the par value of the stock plus the bonds and liabilities assumed was balanced by the inclusion among the assets of an item for good will of $125,000. It has always been a practice in corporate financing to balance the " water " in a stock issue by the inclusion of an item for good will among the assets. All the officers and managers of the taxpayer who have had to do with the transactions in 1899 have died. The only witness who could attempt to tell us anything about them was a man who was the stenographer at the time these trans-

actions took place and he admitted he knew nothing about them of his own knowledge. We feel that, *prima facie*, in the light of the taxpayer's own records, we can not attribute a greater value than $475,000 to the Market Street property.

The taxpayer has attempted to prove by extrinsic evidence that the value of the Market Street property was at least $600,000 on June 2, 1899. It offered several old documents found by a witness in the desk of a deceased manager, one of which is a receipt for $300 given in payment for 3 shares of the taxpayer's stock; one is a receipt, dated October 24, 1900, for $4,900 for 50 shares of the taxpayer's stock at par (with certain adjustments) ; one is a letter, dated September 27, 1900, to the effect that the writer had drawn upon the addressee for $400 for 4 shares of the taxpayer's stock; and one is an option, dated September 24, 1900, granted to a named person to purchase 6 shares of such stock at par. These documents were received as exhibits, over the objection of the Commissioner, for what they were worth. Technically, of course, they are not competent evidence because we have no means of knowing whether they represent real transactions, but, even if they were to be accepted as evidence that 65 shares of the taxpayer's stock were sold (in four lots) at par in the latter part of 1900, we do not think this constitutes proof that the land and warehouse in Market Street were worth $600,000 on June 2, 1899. If we could find that all the stock of the taxpayer had a market value equal to par immediately after the transactions on June 2, 1899, we might be in a position to say that presumably it had assets, either tangible or intangible, sufficient to balance all its liabilities and represent payment in full at par of its stock for purposes of invested capital, but even then we would not be able to allocate the values of good will and real estate, respectively. But the sale of a few shares toward the end of 1900 would not to our minds constitute proof of value in the middle of 1899, even were it demonstrated by competent evidence.

The taxpayer also relied upon the testimony of an expert witness who gave his opinion that the land and building in Market Street were worth $650,000 in June, 1899, but the conclusions of this witness were based upon such processes of reasoning, and his testimony was so self-contradictory, that he wholly failed to convince us that his judgment with respect to the value of this particular property in 1899 was based on anything substantial or was reasoned correctly from the premises upon which it was based. To our minds, he wholly failed to overcome the *prima facie* effect of the original entries in the taxpayer's books, and we must hold that the taxpayer has failed to prove that the property in question was worth more than $475,000 in June, 1899, or that the going business had good will of any value at that time.